Winter v. New Mexico Department of Workforce Solutions 23-2014. And we are ready when you are, Council. Alicia Clark for the appellants. May it please the Court. Thank you. Would you speak right into that microphone or bring it close to your mouth? Thank you. Thank you, Your Honor. May it please the Court. Your Honors are probably familiar with the facts, but I want to start with just summarizing what was going on in my clients' lives in 2020. Danielynn Winter is the lead plaintiff, and when the pandemic was becoming apparent in the news, she and her daughter and son-in-law and her toddler grandson consolidated their households because her daughter told her, if you don't come live with us, we're not going to see you until after this is over. So she moved in with her daughter and son-in-law and grandson, and she was going to continue to work from home. As it turned out, her call center job switched everyone to day shift, and she was charged with being the babysitter, full-time babysitter, for her toddler grandson and working on the same shift because her daughter and son-in-law were working day shift. She was not able to do that for obvious reasons, and so she was forced to quit her call center job. I won't go into all of the other circumstances for the three other plaintiffs or appellants. Well, let me interrupt for one minute because I'm a little confused about what the status is with respect to some of the appellants. Is Ms. Winter the only one who has not yet received these benefits at this point? It depends which benefits we're talking about. She is the only one who has not received any benefits. There are some supplemental benefits that were available just in 2020, and it's the Department of Workforce Solutions' position that they no longer have access to these benefits. I'm speaking of FEMA money that was released by the then president between August and September of 2020 in the amount of $300 per week after the FPUC, which Congress had authorized, expired. So as set forth in the briefing before the district court, the three plaintiffs who did receive their PUA lump sums did not receive some of those other benefits, and so that's still outstanding. But as far as PUA goes, Danielyn Winter, the lead plaintiff, is the only one who has not received any PUA, and she has an appeal pending in state district court right now. And what was the reason they singled her out to give no benefits? What was her default? Well, they don't deny that she's potentially eligible for benefits, first of all, because, you know. But she was denied because they didn't think that the law applied to grandmothers. The law didn't apply to grandmothers? That's what I said. I thought it was a pretty wild argument, and as I said, it's pending in state district court right now. So, yeah. That's that the caregiver meant just a parent, like a biological parent, or somebody with a legal custody. So I think if she had had a guardianship, the department wouldn't have argued that she wasn't. Well, do we have to wait until we find out what the state does on that claim? No, Your Honor. And the PUA benefits with regard to Ms. Winter? No, Your Honor, because this isn't about ultimate eligibility. This is about having a property interest, and Congress created a property interest in PUA through the use of mandatory non-discretionary language directed at the administrator of the benefit, which is the individual claims examiners, ALJs, and the like at the Department of Workforce Solutions. Through that agreement to be bound by Section 2102 of the CARES Act, the department limited its own discretion. This is very much like Brown v. Epler from this case, from this court. I apologize, from this court, which you're probably familiar with. In that case, the court, so the district court in Brown v. Epler had incorrectly, as it turned out, focused on Oklahoma's common carrier statute. David Brown, the plaintiff in that case, was somebody who rode the city buses, and he was the subject of a lifetime ban by the Metropolitan Transit Authority for Tulsa. And that was upheld by the district court because they were focusing on Oklahoma's common carrier statute, and they said, well, whether or not the current codes of conduct for the MTTA would require a ban doesn't matter because the MTTA had discretion under Oklahoma's common carrier statute to change the rules at any time. This court, the Tenth Circuit, said that was wrong. The focus is on the MTTA's choice to limit its own discretion, and remanded it to the district court for a focus on whether the MTTA's own code of conduct for when they could ban a passenger tied its own hands. And so that's just like that here. That's just like this case. Would the result have been any different in Brown if they had the discretion to just stop having bus service at all? For everyone? For everyone. Well, yeah, he wouldn't have had a property interest in bus service if they had just suspended all bus service. Isn't that what they're arguing here, your opponents are arguing here, is that once the state, because the state had the discretion not to offer the PUA benefits at all and discontinued the program, that there's no property interest? Just like if they discontinued bus services in Brown versus Epler. Oh, I didn't understand your question, Your Honor. That was apparent. If MTTA or the state had suspended all bus service for everyone, then before, I mean, there would have been no property interest in anyone at that point. If the, if, are we talking about relative to the, relative to the MTTA suspending bus service or the state suspending it? Either one. Well, so. Well, I mean, we can take it out of the analogy and just look at the argument that's being made here, which is that because the state had the discretion not to offer these benefits at all and could discontinue offering them at any time with 30 days' notice, their argument is therefore it can't be a property interest, a liberty interest, protected liberty interest. Property interest. Property interest. Right, right. No, Your Honor. So the fact of the matter is they didn't opt out of the agreement to administer the PUA program. So there were a set of conditions, the fulfillment of which would give rise to the legitimate expectation that the benefit would be approved. That's Jacobs-Visconsi-Jacobs from the Tenth Circuit. That agreement with the CARES Act, which it incorporated, was the set of conditions which bound the Department of Workforce Solutions to accept these applications. So the fact that the set of conditions could have been different is irrelevant, because these were the set of conditions that were in effect at the time. So that's why in Dickerson and its progeny there was no property interest, because there was no set of conditions, the fulfillment of which would give rise to a legitimate expectation that the benefit would be approved. And by the way, Dickerson and the other cases that followed that reasoning, saying that there was no property interest because the state had discretion to get out, that was the wrong reasoning. The reasoning is because procedural due process doesn't apply to legislative acts, and that's bimetallic, onyx properties, U.S. v. Locke. That was a law of general applicability. They could challenge that at the ballot box. Congress said the states could get out of the agreements with 30 days' notice to the Department of Labor. So that was all the process they get, is they can vote out their representatives who voted for the CARES Act. So the discretion analysis is honed at the administrative action. It's not executive discretion, it's administrative discretion, and I'd like to reserve the rest of my time. Can I ask you a question? What is the relevance of the absence of a private right of action in the statute? It's not relevant. The property interests are varied. A private right of action is not the only type of property interest. Property interests are broad in their type, they're varied. I have a card that says property denotes a broad range of interests that are secured by existing rules or understandings. The types of interests protected by due process are varied and as often as not intangible relating to the whole domain of social and economic fact. A person's interest in the benefit is a property interest for due process purposes if there are such rules or mutually explicit understandings that support his claim to the benefit and that he may invoke at a hearing. A right to a particular decision reached by applying rules to fact constitutes property. A private right of action is one type of property interest. The reasoning was very flawed below, and I would like to reserve the rest of my time. Thank you, Your Honors. Thank you. May it please the Court. I'm Andrea Chrisman on behalf of the New Mexico Department of Workforce Solutions. Kind of circling back a little bit to what Ms. Clark was saying, the issues that are before the Court today in her summary of issues were specific to this due process property interest. The plaintiff did, the plaintiff appellant also raised an equal protection that I'd like to just dispose of quickly that they did not issue or identify and establish a class that these plaintiffs were part of a group that was treated any differently than other similarly situated claimants. As noted by this Court earlier, all appellees were treated the same and all people in the same situation were treated the same. Standard unemployment benefits were denied under certain circumstances at the state level, and we, the state, determined that those claimants were not eligible for pandemic unemployment assistance, so they were not offered that link. All, again, all claimants were treated the same, and so we would like to dispose of that equal protection analysis because a class was not established. Can I go to the mootness question over to the, whether there's still an outstanding claim? Sure. The three appellant's claimants, Martinez, Barela, and Brunner, do they have any outstanding claims or do they have everything that they want? So all the plaintiffs have been offered the link for the pandemic unemployment assistance benefits, which was what the issue was. The claimants specifically in this lawsuit were not offered that link to apply for the CARES Act benefits, the federal benefits, because of their ineligibility under the standard benefits. But those three were offered, given the opportunity now to apply. All four have. Yes, I'm sorry. All four have. Yes. And there was apparently a right to call back benefits that you think weren't earned. Is that any risk at all, or is the state agreed that they wouldn't try to call back, the Department of Workforce Solutions wouldn't try to call back any payments already made? So I'm not sure I understand the question, so I'm going to try and answer it, and then if I'm off track, let me know. But if a payment was made to any claimant that they were not eligible for, there would be a determination as to whether or not those benefits need to be repaid to the state based under state law and federal law. We would not – the three plaintiffs that have received the benefits under pandemic unemployment assistance have received those benefits because their eligibility has been determined. So we would not claw any benefits back from that. And that's why Ms. Winters had the predetermination denial. And so what is Winters' statement now? Has he gotten – has he been enrolled? Has he got the benefits of the CARES Act? Or where is he right now? No, so Ms. Winters is a female. She's the grandmother that Petitioner was speaking of. She has not been determined eligible under one of the criteria under the CARES Act. So, again, going back to the eligibility for the benefit. But I thought eligibility – individual eligibility was not an issue in this appeal. Correct. Correct, individual eligibility isn't. But to the degree that – So we put that aside. Right. Yeah. Right, but then I don't understand your question. Well, so she may not qualify because she's not individually eligible. Correct. But that is not an issue in this case. Correct. Other than that, you don't say that – you're not arguing that PUA wouldn't otherwise be available to her if she met the criteria. Correct. So why is this case not moved? Right, and that was our original argument at the lower court is that this is moved. So give me your best argument for – I mean, I don't – you're saying obviously it is moved. But is there any argument on the other side right now? No, the Department of Workforce Solutions doesn't believe that there is. We believe that all claimants who were in this situation where they were offered standard unemployment benefits – so a pandemic unemployment assistance cannot be offered. You're not eligible for that offering if you're standard unemployed eligible. So the Department of Workforce Solutions denied eligibility to a group of claimants because they were not eligible under the state employment benefits. Since that decision has been made and since this lawsuit has been filed, we have opened up the link for those who were ineligible – who were eligible for benefits monetarily but ineligible for benefits non-monetarily, meaning they didn't meet one of the specific criteria. We have since opened up that link, and all claimants under New Mexico law who have been in that situation where they were denied the standard benefits have been offered eligibility for pandemic. Now, you could go back, though. I mean, so courts are not very – don't look very favorably to people who move things because they say, well, we'll agree with the claim. What's stopping you from going back to your old position if this case gets dismissed or resolved? Well, and nothing would because now the pandemic unemployment benefits are no longer live, right? That program ended on September 4th. So when we corrected the – when we opened up the link to allow these benefits, to allow the opportunity to apply for these benefits, that was made available, and everybody availed themselves of it. So we wouldn't go back now. All of those claims have been adjudicated, and everybody would have had the opportunity to apply for it if eligible would have received benefits. And that program, that federal program, isn't still working. So there's no risk that you would now go back over it. All right. Correct. So you stand by your position it's moot? Yes, absolutely. Your opponent argued that the reason it's not moot, even as to the three who have received the TUA benefits, is because of their interest in receiving FEMA benefits. Is that even an issue in this situation? No, and we don't believe that's an issue, first of all, before this court, because that wasn't raised on any of the statement of issues. It also wasn't raised in the lower court, and the lower judges didn't make any determinations. Specifically, the CARES Act benefits were what was – in this case specifically it's the pandemic unemployment assistance, but there was also federal pandemic assistance, which was an additional supplement to any benefit. There was an MEUC, which was a mixed earner's income. So there was three different types. There was four different types of benefits under CARES, but none of those were what is called the lost wages, which is when President Trump did an executive order toward the end of 2020 giving an extension on what was considered the supplemental extra dollars. But that wasn't considered under the CARES Act, and that was an executive order expressly distinct from this. And the other benefits referred to by the appellants today was a state benefit that the state supplemented during around November of that time. And again, it would be – certainly it was a state-only benefit, not a federal benefit at all. But that was at the discretion of the state to not only elect to do that, but also to determine the eligibility criteria for that. So we don't believe that's part of this current appeal. Assuming for a moment that it's not moot and we get to the merits, isn't this a property interest so long as New Mexico has the program in place? I mean, the statute's very clear if people meet the eligibility requirements and New Mexico has signed up for the program, that the person is entitled to the benefit. Right, and we don't believe that's the case. The first problem with that is that in order to be eligible for the pandemic unemployment assistance, the claimants had to meet a criteria of not being eligible for the state standard unemployment benefits, and they didn't meet that hurdle. So aren't you conflating the two issues we've talked about before? One is whether you're a person covered generally under this, and if you meet that criteria you would be entitled to these benefits without discretion. And the other is the factual question on a case-by-case basis of whether this particular person is in fact eligible for those benefits. Right, and the distinction that we're making is that in order to even be offered the federal benefits, you had to meet criteria to get you into the federal program. So in order to get to whether or not we're in the property interest of federal benefits, you had to not be eligible for the state benefits. And so a covered individual is one under the CARES Act statute, is one who does not meet the standard unemployment benefits. So the Department of Workforce Solutions does not believe that these would be even people who don't cross the threshold into being available for this property interest because they need the monetary eligibility but not the non-monetary. It's impossible for them to state a claim of any reasonable and legitimate expectation of entitlement to benefits because that expectation is unilateral and abstract. They don't meet that threshold criteria and it's not the type recognized under due process. You make an argument in your brief that it can't be a property interest because a property interest can't exist and then not exist if New Mexico decides to stop participating in the program. Do you remember that argument? Yes. I have some trouble with that argument because when we have a term employment contract, there's a property interest that exists for the term of that contract. And so it exists. And at the expiration of the term, it doesn't exist. And yet the Supreme Court and this court and every other court that's looked at it has said that, yes, indeed, it's a property interest, assuming it's not an at-will situation. And there's no problem with it existing and then not existing. So why should it be any different here? The reason the Department thinks that this is distinct is because of the temporary nature of the benefits. And the fact that the agreement- The temporary nature of your property interest in a term employment contract. Right, but the agreement between the federal government and the state government gave the opt-out at any time with a 30-day notice. So with that 30-day notice- A lot of those term contracts have an opt-out with 30- I mean, you know, it seems to me that if you are opting in, New Mexico's opted in, for the period that you are involved in the program, if it is non-discretionary that you pay benefits to people who qualify, I don't understand, I'm having trouble following your argument, why they don't have a property interest in that benefit during the term that New Mexico has opted in. Understandable. And while we- I can definitely see the court's position on that, but our position was that due to the temporary nature, we could have opted out at any time. The flexibility of this program, the fluidity of this program, there was no expectation of benefits because the program kept changing. The original offering was only for 13 weeks originally. It extended again at the end of 2020, again in 2021. So the discretion of the federal government, the fluidly changing atmosphere of the programs itself, and then the temporary nature of it, it was a supplemental benefit. As the lower courts in both Moss and in Dickerson have pointed out, it's the temporary supplemental nature of it that killed the property interest. There was discretion on both the state's part to be able to elect out of it, to opt out of it, and the government's, the federal government's discretion to change the benefits as they did. As you know, during the pandemic, the criteria changed, the terms changed, the monetary amounts changed. So the discretion on both parts is what we believe. The temporary nature of these programs is what kills the property interest. A change in the terms for eligibility doesn't necessarily change whether New Mexico had discretion. Right, but we had the discretion to opt out. So with a 30-day notice, we could have exited. The fact that we didn't elect to do so I don't think kills the discretion. So the only discretion you point to is the discretion to opt out. To have ended the benefits, yeah. Okay. And I guess that's kind of, off of my outline, we've kind of deviated from it, but I have no further comments to make, so I only have a minute 36. Does anybody have any questions that they'd like to address to me before? Doesn't appear so. Thank you. I will go ahead and rest.         Your Honors, as we said in the end of our reply brief, if a party is claiming that a matter has become moot after the end of it, they have the burden of coming proof to show subsequent events that have occurred. Maybe you can tell us why it is not moot. It's not moot because Ms. Christman just said, it's impossible for my clients to meet the claim of eligibility for PUA when they've already approved them for PUA, three of them. She's saying they're not eligible. So clearly she's saying that what they did was right. She's defending what they did still. She's saying that because they were monetarily eligible for standard unemployment insurance, also known as UC, unemployment compensation, that they could not be eligible for PUA. She says there's no danger that they're going to be charged with overpayments. Obviously there is a danger because she's aggressively defending their position of saying that my clients don't have a property interest. In spite of the fact that on page seven of their response brief, they referred to section 2102 having requirements for eligibility. They know that their discretion to. I thought that the criteria, I thought that the question of whether these individual claimants were eligible or not wasn't the issue that there was in this case. Right. Both briefs say that that's off the table and yet that's not what's being argued. No, it's not. I think you're misunderstanding what I'm saying, Your Honor, respectfully. Ms. Chrisman said that these folks are not eligible. And they clearly have a property interest in it because they were granted the benefit and they have not even claimed that their claims examiners or ALJs have discretion to deny the benefit upon a showing of eligibility. There are strict eligibility rules. They have not denied that. They haven't denied that at all. That's the test for a property interest. So clearly it's not moot because they could reverse themselves at any time. Ms. Chrisman right now is assuring you that they're not going to reverse themselves and charge my clients with huge overpayments for these lump sums, but she's telling you what you want to hear to moot this case out. Well, she can tell us what we want to hear. We just want to hear the truth. We don't have anything besides that. But she's saying it on the record. And so that wouldn't be a lightly removed statement by her. Your Honor, it's false. As I said, first of all, we've briefed mootness twice, in May of last year and December of last year. The judge disposed of it twice. The FEMA benefits were contingent on eligibility for PUA. That's why my clients who were granted the PUA lump sums are still entitled to them. So what's the holdup for Winter? What's the holdup for Winter is that it's in the district court. It's in the state district court. I beg your pardon? They didn't let her apply until two years after. But the other people have gotten approved. Why hasn't Winter gotten approved? Because they're fighting it. They're fighting it. What are they fighting about then? They're fighting about whether she meets the definition under DD of Section 2102. What about that definition do they say she didn't meet? They say that you can't be they say primary caregiving responsibility infers primary caregiver and that you have to have legal custody of the child in order to have primary caregiving responsibility for that child. That's their argument. But that's a definition of what is meant by primary caregiver. That is not an issue that was presented to us in this case at all. No, and, Your Honor, as you said, ultimate eligibility and whether you have a property interest, which is potential eligibility, are two different things. So we're really getting off track if we're talking about ultimate eligibility. All right. Thank you. Thank you, Your Honors. We will take this matter under advisement.